67 F.3d 309
 RICO Bus.Disp.Guide 8914
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John D. TRUDEL, Plaintiff-Appellant,
v.
John R. STOLTZ; Charlene Stoltz; Wilford K. Carey;
Advanced Systems Concepts, Inc., an Oregon corporation;
Advanced Navigation and Positioning Corporation, an Oregon
corporation, Defendants-Appellees.
 No. 93-36061.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1995.
Decided Sept. 25, 1995.
 
 1
 Before: HUG and FERGUSON, Circuit Judges, and SCHWARZER, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Trudel's complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-68 (1988 & Supp. V 1994), as well as a supplemental state law breach of contract claim. After having given Trudel leave to amend, the district court dismissed the RICO claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and dismissed the contract claim for lack of jurisdiction. We have jurisdiction of the appeal under 28 U.S.C. Sec. 1291 and affirm. The judgment against Trudel on his RICO claim does not bar a state court action on the contract claim.
 
 Standard of Review
 
 4
 The dismissal of a complaint under Rule 12(b)(6) is reviewed de novo. Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1306 (9th Cir.1992), cert. denied, 113 S.Ct. 1644 (1993). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff would not be entitled to relief under any set of facts it could prove in support of the claim. Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.), cert. denied sub nom. City of Manhattan Beach v. Buckey, 113 S.Ct. 599, and cert. denied sub nom. Children's Inst. Int'l v. Buckey, 113 S.Ct. 600 (1992); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In ruling on a motion to dismiss for failure to state a claim, we accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir.1990) (citing Love v. United States, 871 F.2d 1488, 1491 (9th Cir.1989)). The court need not accept conclusory allegations as true, however, and may grant the motion for insufficient factual allegations. See Pena v. Gardner, 976 F.2d 469, 471-72 (9th Cir.1992); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir.1990) ("[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").
 
 Procedural Background
 
 5
 Trudel filed two actions alleging RICO claims against the same group of defendants; both actions were dismissed by the district court for failure to state a claim.
 
 
 6
 Trudel filed his first action in March 1992. In that action, Trudel brought claims under 18 U.S.C. Sec. 1962(c)[1] and Oregon common law (breach of contract) against defendants John R. Stoltz, Charlene Stoltz, Advanced Systems Concepts, Inc., and Advanced Navigation and Positioning Corporation ("the Stoltz defendants") and Wilford K. Carey ("Carey"). Trudel v. Stoltz, Civil No. 92-328-DA. The alleged predicate acts included acts of mail fraud and wire fraud.
 
 
 7
 Defendants moved to dismiss. They contended that Trudel's complaint--which they characterized as an attempt to convert an ordinary contract dispute into a RICO claim--failed (1) to allege the requisite "pattern of racketeering," and (2) to allege with particularity, as required by Fed.R.Civ.P. 9(b), the predicate acts that served as the basis for the claim. In June 1992, the magistrate judge found that Trudel had failed adequately to allege the "pattern," "racketeering activity," and "enterprise" elements of the RICO claim. The allegations regarding the "enterprise" element were defective, in part, because the complaint identified one of the corporate defendants (ASCI) as both a "person" and the "enterprise." In doing so, the complaint failed to meet the requirement of section 1962(c) that the "person" who engages in the racketeering activity must be separate from the "enterprise" whose affairs are conducted through a pattern of racketeering activity. In July 1992, the district court adopted the magistrate judge's findings and recommendations, and dismissed Trudel's claims without prejudice.
 
 
 8
 Trudel commenced his second, and present, action in May 1993. In it, he alleged RICO and breach of contract claims founded on the same facts as the earlier action. This time, however, Trudel brought the RICO claim under 18 U.S.C. Sec. 1962(b) and (d).[2] By filing under subsection (b), Trudel sought to avoid the "person"/"enterprise" problem of the 1992 complaint.
 
 
 9
 The defendants also moved to dismiss this complaint for failure to state a claim. Granting their motions with leave to amend, the district court found that Trudel had failed to allege the time, place, and manner of the frauds alleged, that the scattered references to the use of the United States mail were too generalized, and that there were no allegations of specific telephone conversations in the complaint.
 
 
 10
 In August 1993, Trudel filed the first amended complaint, again alleging RICO claims under subsections (b) and (d). Carey and the Stoltz defendants again moved to dismiss on the ground that the complaint failed to state a RICO claim. Defendants argued that Trudel had once again failed to plead the required facts to state a claim for racketeering activity; namely, he failed to allege with particularity a pattern of racketeering activity and the predicate acts of mail and wire fraud. Instead, defendants argued, Trudel had merely alleged a simple breach of contract. Trudel, however, contended that the action was more than an ordinary action for breach of contract, because the RICO claim addressed the fraudulent means by which defendants induced him to enter into the contract.
 
 
 11
 In October 1993, the district court dismissed the RICO claims with prejudice, finding that the allegations in the first amended complaint came "no closer to stating a claim for a violation of RICO" than the allegations of the 1992 complaint. In reaching this disposition, the court relied in part on the magistrate judge's findings and recommendations in the 1992 action.[3] This appeal followed.
 
 Allegations in the Complaint
 
 12
 Defendants John R. Stoltz and Charlene Stoltz were officers and directors of defendants Advanced Systems Concepts, Inc. and Advanced Navigation and Positioning Corporation ("ANPC"). Defendant Carey acted as a business advisor to the Stoltzes, and served as registered agent for various corporations and business entities in which the Stoltzes had an interest, including ANPC and Advanced Aircraft Applications.
 
 
 13
 Trudel alleged that the defendants developed an "enterprise" for two purposes: (1) "churning" the study and development of aircraft navigation systems and technologies, thereby generating government contracts and infusing investment capital into the business, and (2) developing and commercially exploiting an advanced aircraft landing system. Trudel alleged that, to facilitate the operation of the enterprise, the Stoltzes engaged in a scheme to persuade investors to contribute capital or operating funds, without yielding any control of the enterprise to them in return. To attract investors and give the enterprise an aura of respectability, Trudel alleged, the Stoltzes "stocked the various enterprise entities" with a succession of competent professionals (engineers).
 
 
 14
 Trudel claimed that, incident to the primary purposes of the enterprise, the Stoltzes and Carey engaged in a systematic pattern to defraud these professionals. Using the mail and interstate phone lines, defendants allegedly recruited these professionals, offering them bonuses, partnership shares or stock ownership, and percentages of projected revenues from the technologies or ownership in the technology itself. After the professionals had accepted these offers and quit their previous jobs in reliance on them, defendants delayed entering into formal written agreements, ultimately defaulting on their oral promises of compensation. The professionals affected by defendants' alleged scheme included Trudel and four other individuals: Robb Bell, Robert Phillips, Jim Lehman, and Tom Dagostino.
 
 
 15
 Trudel claimed that defendants recruited him through an advertisement in a major Oregon newspaper and negotiated his employment agreement, in part, via United States mail. Trudel alleged that he himself was the victim of three fraudulent acts connected to his employment contract with defendants: first, defendants fraudulently induced him to sign a contract for employment by promising certain compensation and bonuses, including equity, that they had no intention of delivering; second, as soon as Trudel had terminated his previous employment, defendants "substituted" a second contract with less advantageous terms; and, third, defendants fraudulently induced him to permit his equity interest to be transferred into a new entity, which defendants subsequently dissolved.
 
 Discussion
 
 16
 In this appeal, Trudel claims that the district court erred in relying on the reasoning the magistrate judge used in dismissing the 1992 action, because the first amended complaint contains many additional factual allegations and is directed at a different statutory standard than the 1992 complaint. He also claims that the first amended complaint adequately alleges (1) a pattern of racketeering activity, (2) the time, place, and manner of the mail and wire fraud, and (3) all the elements necessary to maintain a claim under section 1962(b).
 
 
 17
 As for the first point, the district court did not err in adopting the reasoning the magistrate judge relied upon in dismissing the 1992 action. Although section 1962(c) differs somewhat from section 1962(b), both require a "pattern of racketeering activity." The court had found that Trudel's 1992 complaint failed adequately to allege the "pattern," "racketeering," and "enterprise" elements of his section 1962(c) claim. While the present complaint contains different "enterprise" allegations, consistent with subsection (b) instead of (c), the "pattern" and "racketeering" deficiencies remain.
 
 
 18
 A. Failure to Allege a "Pattern"
 
 
 19
 RICO does not target sporadic activity. Section 1962(b) makes it unlawful to acquire an interest in or control of an enterprise through a pattern of racketeering activity. Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1398-99 (9th Cir.1986). To satisfy the statute's "pattern" requirement, a plaintiff must show relatedness plus continuity, i.e., "that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." See Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir.1991) (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989) (emphasis in original)). Relatedness of predicate acts is demonstrated if the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc., 492 U.S. at 240 (quoting 18 U.S.C. Sec. 3575(e)). "Continuity is demonstrated if the illegal conduct poses a threat of continued criminal activity, such as when the illegal conduct is 'a regular way of conducting [a] defendant's ongoing legitimate business.' " Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir.1992) (quoting H.J. Inc., 492 U.S. at 243).
 
 
 20
 Here, Trudel has not adequately alleged a "pattern" of racketeering activity because the complaint fails to satisfy either the relatedness or the continuity prong of the pattern test.
 
 
 21
 Regarding the relatedness prong, Trudel alleges a number of acts of fraudulent inducement, but fails to show how these acts are related. First, Trudel alleges that defendants fraudulently induced him to enter into an employment contract and that this fraudulent inducement consisted of separate "acts." However, those acts were all part of a "single episode having [a] singular purpose." See id. Where an individual plaintiff alleges a number of acts against him, but the collective activity has a single purpose, the acts do not amount to a pattern of racketeering activity. Id. Thus, the predicate acts Trudel alleges were directed at him cannot, in themselves, amount to a pattern of racketeering activity.
 
 
 22
 Moreover, the predicate acts allegedly directed at the other professionals (Dagostino, Phillips, Bell and Lehman) lack sufficient similarity to the acts allegedly directed at Trudel to establish a pattern of racketeering activity. As for Dagostino, Trudel alleges that defendants promised Dagostino employment, but failed to commit those promises to writing as Dagostino requested. Trudel also alleges that Dagostino worked as an unpaid consultant for defendants for over a year and a half, during which time Dagostino and defendants attempted to negotiate the terms of a written agreement. Ultimately, however, Dagostino and defendants did not enter into a written agreement. Thus, unlike Trudel, Dagostino never entered into an agreement for an equity interest or other bonus.
 
 
 23
 As for Phillips, his dispute with the Stoltzes allegedly centered around the failure of a "compensation committee" to convene to discuss the terms of his bonus. Although Phillips was allegedly promised a bonus that might take the form of equity or a percentage of gross revenues, the terms of that bonus were never determined. Thus, Phillips never entered into an agreement for any more than his base salary.
 
 
 24
 As for Bell, the Stoltzes did allegedly promise him an equity interest in the venture, but that promise was made three years before Trudel became involved in the enterprise. Trudel attempts to get around this time lag by alleging that, since the mid-1980s, defendants had made a series of oral promises to Bell to reward him with an equity share for securing funding for one of defendants' ventures. Trudel also refers to another 1989 scheme to defraud Bell. None of these alleged events, however, is sufficiently connected to Trudel's contract disputes to constitute a "pattern."
 
 
 25
 As for Lehman, Trudel does not allege that defendants made a promise that they did not intend to perform, or even that defendants defrauded Lehman.
 
 
 26
 Trudel's allegations are similarly deficient with regard to the continuity prong of the pattern test. The Supreme Court has provided no hard-and-fast rule for determining continuity, instead indicating that "[w]hether the predicates ... establish a threat of continued racketeering activity depends on the specific facts of each case." H.J. Inc., 492 U.S. at 242. The Supreme Court has, however, offered examples of situations where the continuity requirement would be met. Namely, the continuity requirement would be met where "the related predicates themselves involve a distinct threat of long-term racketeering activity" or where "the predicate acts or offenses are part of an ongoing entity's regular way of doing business," whether that business is criminal or legitimate. Id. at 242-43. Here, the amended complaint alleges neither a continuing threat of long-term racketeering activity nor acts that were part of an on-going entity's regular way of doing business.
 
 B. Failure to Allege Racketeering Activity
 
 27
 The first amended complaint also lacks sufficient allegations of racketeering activity. Fed.R.Civ.P. 9(b) requires that "the circumstances constituting fraud ... shall be stated with particularity." This court has interpreted Rule 9(b) to require that a plaintiff "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods. Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir.1988) (quoting Schreiber, 806 F.2d at 1401), cert. denied, 493 U.S. 858 (1989); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985). The same pleading requirements apply to RICO claims based on predicate acts of mail fraud. See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir.1991) (plaintiff must state, time, place and manner of each act of fraud, plus the role of each defendant in each scheme), cert. denied, 502 U.S. 1094 (1992). Moreover, in mail fraud cases, the plaintiff must plead with specificity both the use of the mails and the fraudulent conduct. Id.
 
 
 28
 Trudel alleges a series of predicate acts of mail and wire fraud. However, he fails to plead with specificity the allegedly fraudulent statements that form the basis of the predicate acts. Although the first amended complaint contains some specific allegations, it fails to meet that specificity standard overall. Moreover, although Trudel alleged various specific mailings by defendants, those allegations alone do not constitute a scheme of mail fraud. To constitute mail fraud under RICO, mailings must be incident to a fraudulent scheme. Schmuck v. United States, 489 U.S. 705, 712-14, reh'g denied, 490 U.S. 1076 (1989). The mailing itself may be an innocent component of the fraudulent scheme, but proof of the fraudulent scheme is required. See id. Defendants may well have breached the employment contract with Trudel, but that conclusion does not transform the prior mailing of the contract into mail fraud.
 
 
 29
 Because Trudel failed to allege a "pattern of racketeering," he also failed to state a claim under section 1962(d).[4] See Religious Technology Ctr. v. Wollersheim, 971 F.2d 364, 367 n. 8 (9th Cir.1992) (per curiam) (concluding that conspiracy claim under subsection (d) failed because plaintiff failed to allege substantive elements of RICO claim).
 
 
 30
 AFFIRMED.
 
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 18 U.S.C. Sec. 1962(c) prohibits the conduct of affairs of an enterprise "through a pattern of racketeering activity."
 
 
 [2]
 18 U.S.C. Sec. 1962(b) makes it unlawful for "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Section 1962(d) makes it unlawful to conspire to violate subsections (a), (b), or (c)
 
 
 [3]
 In considering defendants' motions to dismiss, the district court could properly take judicial notice of the 1992 complaint that was the subject of the magistrate judge's findings and recommendations. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir.1988)
 
 
 [4]
 Section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."